**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUTHER D. FRAZIER, | No.  2:23-CV-1820-WBS-DMC-P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JEFF LYNCH, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Pending before the Court are Petitioner's petition for a writ of habeas corpus, see ECF No. 1, Respondent's answer, see ECF No. 16, and Petitioner's traverse, see ECF No. 20.  Respondent has lodged relevant state court records, see ECF No. 12.  Also before the Court is Petitioner's unopposed motion to file a supplemental brief, with proposed supplemental brief attached, see ECF No. 24.

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  Under AEDPA, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

/ / /

1

state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at

406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the

state court's summary denial was based on an objectively unreasonable application of that law.

See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

## I.  BACKGROUND

A.  **Facts**[1]

The following facts are recited by the California Court of Appeal in its opinion on direct review affirming Petitioner's conviction and sentence, and Petitioner has not presented any evidence to rebut the presumption that these facts are correct.  The Court of Appeal outlined the facts of the case as follows:

> Defendant fatally shot the victim outside the victim's apartment. At trial, defendant testified and claimed self-defense.
> The victim was defendant's heroin supplier. A video surveillance camera recorded defendant's car approaching the victim's apartment prior to the shooting. A postal carrier saw defendant and another person arguing during what appeared to be a drug deal. Defendant was holding a short barrel .38-caliber revolver. The person with whom defendant was arguing walked away and defendant followed. The two men went between some buildings. The postal carrier heard gunshots, and while running away from the scene, he looked back and saw defendant walk out.
> An autopsy showed that the victim was shot six times -- in the chest, abdomen, and pelvis, including at least once in the back. All shots were fired from close range.
> Defendant later told a friend he had "murked somebody." The friend told the police that "murked" meant "killed."
> Defendant resided at his parents' home. His father owned .38-caliber revolver, which he discovered was missing after hearing about a shooting in the neighborhood. The police arrested defendant at the parents' home, but did not find the gun.
> In a videotaped interview with the police played for the jury, defendant claimed acquaintances must have stolen his father's gun. He admitted the victim was his heroin supplier. Throughout the earlier parts of the interview, defendant denied being at the scene that day, but then admitted going to the victim to beat him up because the victim had threatened his family. Defendant said another individual, who had accompanied defendant, shot the victim.

/ / /

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence.  See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

During his trial testimony, defendant disavowed his police interview statement [FN4] admitting he "lied through [his] teeth," but saying he did so to protect his family, who the victim had threatened. Defendant testified the victim had engaged in a campaign of extortion and intimidation to gain use of defendant's car and made a series of threats to defendant's family. Defendant claimed the victim professed to be a G-Mobb gang member and warned defendant that if he went to the police, the gang would kill his parents. Defendant told the jury he shot the victim in self-defense after the victim pulled out his gun.

[FN4] The videotape is not in the appellate record. A transcript of the interview was provided to the jury and to this court, but was not admitted in evidence. Since neither party questions the accuracy of the transcript, we rely on it.

**The First *Marsden* Motion**

After the parties rested and the jury left the courtroom, defense counsel stated that defendant wanted to address the court and suggested that it occur outside the prosecutor's presence. The prosecutor left.

Defendant told the trial court that he felt defense counsel had been ineffective because he had promised to produce evidence corroborating defendant's story, consisting of information gleaned by a private investigator from the internet about the victim's involvement with guns and gangs, but had not done so. Asked by the court if there was anything more, defendant said, "That's it, Your Honor."

In response, counsel said the best his investigator had found was "a quasi sort of girlfriend of [the victim] who said that he was involved in drugs." Counsel considered this "irrelevant" in light of the anticipated and actual testimony about drug sales in and out of the victim's apartment.

Counsel added that defendant had not claimed self-defense until after "it became abundantly clear that this [third] person he was blaming was tracked down by the Citrus Heights Police Department and had a rock solid alibi." Then, for the first time, defendant talked about "his family and [the victim]'s threats, et cetera." Although potential witnesses, including the victim's roommates, had corroborated defendant's claim that the victim treated him badly, there was no evidence tying the victim to guns or gangs. This incident did not occur in the territory of G-Mobb, the victim's alleged gang. He did not fit the profile of a gang member, and there was no evidence of gang paraphernalia or tattoos.

Counsel told defendant that his self-defense story was his third version of events, there was no evidence supporting it, and the jury would not believe it if he testified to it.

Defendant asserted that there were unproduced witnesses. Counsel replied that a search for Fowler and Marlow, the victim's two roommates, had been unsuccessful. One had an outstanding no-bail arrest warrant, while the other was apparently living in Las Vegas and could not be found.

The trial court denied the *Marsden* motion, finding that counsel's account was credible, defendant had not shown that there was any material evidence counsel failed to present, counsel had used his best judgment to make strategic decisions, and there was no irretrievable breakdown in the relationship between counsel and defendant.

///

5

**The Second *Marsden* Motion**

After the jury returned its verdict, defendant filed two letters requesting a new trial on the grounds that counsel was ineffective and biased against him.

In the first letter, defendant complained that counsel failed to provide "witnesses [he] asked for, police records, gang profiles, proper description of the two different weapons." Counsel showed bias against defendant "by calling me a junky on numerous occasions." Counsel "rarely spoke during the proceedings" and "didn't provide evidence that was available." Counsel had told defendant's father there was a plea offer, but did not tell defendant. Counsel told defendant if he spoke the truth, the jury would find imperfect self-defense at worst.

In the second letter, defendant added that counsel failed to get defendant's "psych records from the jail or the street," did not tell the court that defendant was "off my psych meds," failed to provide defendant the autopsy report, told him throughout the case that he was going to lose, yet simultaneously told him the jury would find imperfect self-defense if he told the truth, and failed to present corroborating evidence about the victim's involvement with guns and gangs. Defendant requested new counsel on retrial.

On the scheduled date of sentencing, the trial court asked whether there had been a plea offer. The prosecutor and defense counsel said there was not.

Permitted to speak on his own behalf, defendant reiterated the allegations in his letters. After he said he was asking for new counsel, the court conducted a *Marsden* hearing.

Defendant asserted that the victim's roommates could have been brought in to testify; the one who lived in Las Vegas had been in town during trial and could have been subpoenaed, and trial could have been continued until these witnesses were available. Counsel had been provided photos showing the victim and his roommate, Fowler with guns, as well as statements from the roommates saying the victim always had a gun, but did not introduce them in evidence. Counsel failed to put the victim's "gang profile" or his police record before the jury. Counsel failed to "give proper rebuttal or cross-examination to recall witnesses that I felt that was pertinent," in particular the postal carrier, and "[d]idn't go into detail about difference in guns." Counsel texted and received e-mails during trial, "unprofessional" conduct that showed he was not paying attention. Defendant did not get the chance to explain that he "went into protective custody" in the jail because people from the victim's gang kept trying to fight him there. Counsel did not provide the jury with a psychological evaluation of defendant done at the jail.

Counsel responded that the roommate in Las Vegas had been located and detained, but was released despite the outstanding warrant against him, and then could not be found again. Counsel had already obtained a couple of continuances, the prosecutor had long been ready for trial, and it was unclear how much longer the trial could have been continued to locate witnesses. In any event, the roommates' testimony would not have benefited defendant: they claimed the victim had seen a suspicious person "sneaking around the neighborhood," went out to confront him, and got shot by him. In other words, their stories were inconsistent with defendant's self-defense claim.

/ / /

6

Counsel said the alleged "photo of the gun" depicted a rifle, which would not have helped defendant because there was no evidence a rifle was involved in the case. The alleged witness statements that the victim always had a gun apparently referred to a "group gun" possessed by one of his roommates; there were no guns in the apartment.

Counsel asserted that evidence of defendant's psychological evaluation or medications would not have benefited him, given his changing stories about the case and his ultimate decision to claim self-defense. Furthermore, the videotaped police interview showed nothing to suggest defendant was "off his psych meds" at the time.

Counsel explained that the postal carrier had been inconsistent about whether the gun he saw had a long or a short barrel, but had consistently said he saw only one gun and defendant was holding it. This evidence did not support defendant's claim that the victim was also armed.

Counsel said that he had explained to defendant that the jury would not believe his self-defense claim, but would see him as a "junkie," "somebody who was strung out" and "killed your drug dealer because you were pissed at him basically." That was what defendant was referring to when he complained that counsel had called him a junkie.

Counsel indicated that he could not properly have questioned defendant on the stand about "protective custody." In any event, defendant's claim was based only on his allegations that unnamed people had threatened him and on a long e-mail from a friend of the victim that expressed the wish defendant would get what was coming to him.

Counsel admitted that he checked his e-mails during the trial, but only on breaks.

Given the opportunity to respond, defendant said he had "evidence right here through statements from transcripts saying from . . . Fowler, that they're always in a gang. . . [¶] Also saying right here in this transcript that he's the type of person to have a gun, the type of person to have had a gun. [¶] Also in transcripts from . . . Morrow from discovery saying right here he had a lot of problems with gangs, and his . . . web KP file had notations he needed to be separated in jail from Bloods. [¶] Also in statements right here from . . . Morrow, also stating that I always backed down. I never tried to confront him. Always tried to avoid conflict." [FN5]

[FN5] Nothing in the record shows what "transcripts" and "statements" defendant was referring to.

Defendant also said: "I have it right here, discovery telling there's a significant difference between the guns that the mailman was talking about and my father's gun. . . . [¶] Also, it even goes into description in the discovery stating what [the victim] was wearing, a black sweatshirt, and a description of the gun that [the postal carrier] was talking about. He didn't go into detail about that for my defense. [¶] And also in the transcript for [the postal carrier] he's even describing everything, the difference between me and [the victim]. So I felt that that needed to be brought up. I have evidence right here, Your Honor, in these transcripts."

The trial court responded that its notes on the postal carrier's cross-examination showed counsel asked him specifically about "the barrel and what he saw about the gun." Furthermore, the postal carrier had made clear that he saw only one gun, which was short-barreled, silver chrome, and shiny, not black.

/ / /

Asked if he wished to add anything else, defendant said: "Yeah. I think that was very pertinent for the trial, Your Honor, because my father's gun is a long barrel. If he would have [seen] my gun, then he would have definitely spoken up and said he saw a longer barrel gun that was more looking like black instead of chrome silver. I felt that was a very big deal." Defendant explained that this was pertinent to his self-defense claim because "that was his gun that the mailman saw."

The trial court said, "But I believe he also, correct me if I'm wrong, made it clear that the person with the gun was an African American male."

Defendant replied: "In his statement, Your Honor, he used the description it was two African American males. One was 5'6", 200 something pounds, Your Honor. And also he went into description saying it was a black sweatshirt and the police also saying that [the victim] was wearing a black sweatshirt, also, Your Honor."

After stating, "just so the record is clear," that the victim was a white male, the trial court denied defendant's *Marsden* motion. The court noted that some of defendant's points (the gang issues and the photographs) were addressed at the prior *Marsden* hearing. The court then stated: "Let's say [the victim] was part of a gang. Let's say he was seen other times with a gun. You're saying he had a gun. The jury could have believed that. The thing is[,] would it make a difference when the evidence showed the victim was shot multiple times in the back, witnesses saw one gun, you had no injuries, there were no other ballistics found to corroborate the victim ever shot off his gun if he did have a gun. [¶] So even if hypothetically all the evidence you refer to was true and was admitted, in light of all the other evidence and given that initially for hours you gave one version, then you gave a different version to the officers when you were interviewed, I don't believe it would have made any difference. [¶] And in terms of this motion, I believe [defense counsel] has properly and effectively represented you through trial and made strategic choices. He considered different options. And he can't--he has to work with what he's given, including the different versions of the statements and given the physical evidence and given the witness statements. [¶] So I find counsel has properly represented [defendant] and will continue to do so. I find there has not been a breakdown in the relationship between counsel and [d]efendant of such kind that would make it impossible for counsel to properly represent [defendant]."

ECF No. 12-11 at 2-9.

B.    **Procedural History**

Petitioner was found guilty of first-degree murder and personally and intentionally discharging a firearm in the commission of the offense. See id. at 1. In People v. Frazier, case no. C082028 (unpublished), the California Court of Appeal affirmed the state court's judgment in all respects except for a minor sentencing matter in response to new legislation and remanded for trial court consideration and discretion. See id. at 1, 13. The California Supreme Court denied direct review on May 12, 2021, without comment or citation. See ECF No. 12-13.

8

Petitioner filed three state court post-conviction actions, all of which were denied. See ECF No. 12-14 (petition filed in the Sacramento County Superior Court); ECF No. 12-15 (Sacramento County Superior Court order denying petition); ECF No. 12-18 (petition filed in the California Court of Appeal); ECF No. 12-19 (California Court of Appeal order denying petition); ECF No. 12-20 (petition filed in the California Supreme Court); ECF No. 12-21 (California Supreme Court order denying petition).

## II.  DISCUSSION

Petitioner raises the following grounds for relief: (1) Ground One – ineffective assistance of trial counsel because counsel failed to present any evidence and neglected to initiate a pre-trial investigation; (2) Ground Two – ineffective assistance of trial counsel because counsel failed to investigate Petitioner's mental condition as mitigation evidence; (3) Ground Three – the trial court denied Petitioner's right to present a complete defense.  See ECF No. 1 (petition); see also ECF No. 24 (supplemental brief).  Respondent asserts that Petitioner is not entitled to federal habeas relief on any of his claims.  See ECF No. 16.

### A.      Ineffective Assistance of Counsel

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional and competent assistance.  See id.   In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The issue of ineffective assistance of counsel was first addressed in this case by the California Court of Appeal in its decision on direct appeal in the context of the trial court's denial of Petitioner's Marsden motions. See ECF No. 12-11, pgs. 9-11. The Court of Appeal stated as follows:

Defendant contends that the trial court's denial of his second *Marsden* motion was a prejudicial abuse of discretion. We disagree.

A defendant "may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, citing *Marsden, supra*, 2 Cal.3d at p. 123.) We review the trial court's ruling on a *Marsden* motion for abuse of discretion. *Berryman*, at p. 1070.

When a defendant after trial asks for appointment of new counsel to prepare a new trial motion on the ground of ineffective assistance of counsel, the trial court must conduct a hearing to examine the reasons underlying the request. (*People v. Diaz* (1992) 3 Cal.4th 495, 573.) If the alleged ineffective assistance pertains to matters occurring outside the courtroom, which the trial court could not have observed for itself, and the defendant makes a "colorable claim" that trial counsel was ineffective, the court may exercise its discretion to appoint new counsel to assist the defendant on a new trial motion. (*Id*. at pp. 573-574; accord, *People v. Smith* (1993) 6 Cal.4th 684, 692-695.)

A colorable claim of ineffective assistance of counsel is one which establishes the possibility that trial counsel did not perform with reasonable competence and counsel's incompetence could have adversely affected the outcome. This standard is not met if the claim "is based in substantial part upon factual representations that are manifestly inconceivable, or upon the failure of trial counsel to produce exculpatory evidence that is legally inadmissible or . . . merely cumulative of other evidence tending to exonerate the defendant that was adequately presented to the trier of fact." (*People v. Stewart* (1985) 171 Cal.App.3d 388, 396,

10

disapproved on another point in *People v. Smith, supra*, 6 Cal.4th at p. 696.)

Here, the trial court held a full hearing on defendant's *Marsden* motion. To the extent defendant's ineffective assistance claim depended on matters that occurred in court, the trial court properly drew on its observations, including its notes on the cross examination of a key witness, to reject defendant's claim. (See *People v. Diaz, supra*, 3 Cal.4th at p. 573.) To the extent the claim depended on matters allegedly occurring outside the courtroom, the court allowed defendant to present whatever evidence and argument he had. Giving defendant the benefit of the doubt, the court then correctly determined that even if all of his alleged exculpatory evidence actually existed, was admissible, and had been presented at trial, it would not have made a difference to the outcome. We agree with the trial court's determination.

First, even assuming that the evidence defendant cited existed and was admissible, it could not have trumped the physical and eyewitness evidence of how the confrontation between defendant and the victim played out, as the trial court found. There was no eyewitness or forensic evidence that the victim had or used a gun on the date of the crime; vague claims that he always or habitually had guns could not have overcome that evidentiary gap. The postal carrier who saw the whole confrontation up to the point of the shooting, testified that defendant had the only gun at the scene, the other person with whom he had been arguing walked away and defendant followed. And defendant's account of a face-to-face shooting at a distance was not reconcilable with the autopsy findings that the victim was shot from behind at close range.

Second, as the trial court also found, defendant's evidence could not have overcome his lack of credibility as a witness. He admitted that he lied nonstop to the police.

ECF No. 12-11, pgs. 9-11.

Ineffective assistance of counsel was also addressed by the Sacramento County Superior Court in resolving Petitioner's post-conviction matter. See ECF No. 12-15, pgs. 3-5. The court first concluded that any ineffective assistance of counsel claims raised on post-conviction review which were previously addressed on direct appeal are procedurally barred. See id. at 3. Next, the state court denied any ineffective assistance of counsel claims which were based on evidence not previously presented to the trial court. See id. at 4. Finally, the court stated as follows with respect to Petitioner's claim that trial counsel failed to present mental health evidence:

. . .To support his claim Petitioner includes two pages from Cigna. Petitioner provides no explanation for why the documents are relevant. Assuming the documents are accurate, they demonstrate that in December of 2013, about 18 months prior to the offense in the present case, Petitioner had trouble sleeping and suffered from anxiety and depression. Petitioner fails to make any connection between Petitioner's mental health records and how they might support a defense. Like above, nothing here

states facts supporting a prima facie case for relief.

ECF No. 12-15, pg. 4.

Petitioner's first two grounds for relief allege ineffective assistance of trial counsel.  See ECF No. 1.

In Ground One, Petitioner argues that trial counsel failed to investigate or provide the following facts at trial: (1) autopsy report of the victim; (2) Petitioner's mental health records and condition; (3) arrest records of the victim; (4) corroborating evidence of Petitioner's testimony; (5) evidence of the victim's gang involvement; (6) the victim's friends kicking down Petitioner's parents' front door; (7) evidence of the victim's gun involvement; (8) eyewitness testimony that would support there being two guns at the scene; (9) video-recorded police interviews from eyewitnesses; (10) the detective's statement that a witness saw Petitioner in the doorway with no gun; (11) a witness' declaration that he and the victim were a part of the same gang; (12) eyewitness testimony that the victim tucked something in his jacket pocket before going outside; (13) witness testimony about threats the victim made to Petitioner and that the victim always carried a gun on him; and (14) witness testimony that the victim was threatening to harm Petitioner's family.  See id. at 18-20.  Further claims that "[t]rial counsel had knowledge of the aggressively demeaning treatment from [the victim] and knowledge [that] [the victim's] gang had a 'certain gun they used.'"  Id. at 19.  Petitioner claims these facts warranted investigation.  See id.  Trial counsel also allegedly checked texts and emails during trial, which Petitioner claims exhibited a lack of focus and professionalism.  See id.  Petitioner claims that trial counsel called Petitioner a "junkie" on multiple occasions.  See id.

In Ground Two, Petitioner argues that trial counsel failed to investigate Petitioner's mental health as a potential defense.  See id. at 21.  Petitioner claims that trial counsel neglected to present the following evidence at trial: (1) Petitioner's mental health status; (2) the victim's provocations and threats towards Petitioner; (3) death threats from the victim that showed psychological abuse of Petitioner; (4) evidence of the victim's gang "showing guns"; (5) Petitioner was not on his psychiatric medicine during the incident; (6) Petitioner was "hyper-sensitive to fears"; and (7) Petitioner had an anxiety attack during the police interview.  Id. at 21-

22. Petitioner claims that if trial counsel had investigated his mental health status, the verdict would have been "more favorable to the Petitioner and [he may have been] charged with a lesser degree." Id.

At the outset, the Court finds that the state courts applied the correct federal legal principles in evaluating Petitioner's claims of ineffective assistance of counsel. Thus, this Court reviews to determine whether the state courts' determinations were based on an unreasonable application of the applicable federal legal standard under Strickland.

Consistent with Pizzuto, the Court first addresses the question of prejudice. To affirmatively prove prejudice, Petitioner must show there is reasonable probability that, but for trial counsel's unprofessional errors, the trial outcome would have been different. Strickland, 466 U.S. at 694. Petitioner cannot make such a showing here. The evidence presented against Petitioner at trial was overwhelming. An eyewitness account and security camera footage corroborate Petitioner's involvement in the shooting. See ECF No. 12-11, pg. 2. Further, Petitioner not only confessed to the crime, he lied during police interviews and changed his story multiple times. See id. at 3. Petitioner admits that his credibility going into the trial was very poor. See ECF No. 1, pg. 23.

The Court also finds that the evidence precluding a plausible self-defense theory was overwhelming. As the California Court of Appeal noted on direct appeal: there was no eyewitness evidence that the victim had or used a gun; the postal carrier testified that Petitioner had the only gun at the scene; Petitioner began shooting after the victim started to walk away; and Petitioner's account of a face-to-face encounter with the victim was inconsistent with autopsy findings showing that the victim was shot from behind at close range. See ECF No. 12-11, pg. 10. Because the evidence foreclosed a plausible claim of self-defense, Petitioner could not have been prejudiced by trial counsel's decision not to introduce the list of evidence desired by Petitioner.

///

///

///

13

As to Petitioner's claim that trial counsel was ineffective for failing to introduce evidence of Petitioner's mental health, the Court agrees with Respondent that trial counsel's decision not to introduce mental health evidence did not fall below an objective standard of reasonableness. In particular, because diminished capacity evidence is not admissible in California, the mental health evidence that Petitioner wanted to include in his defense would not have been accepted for that purpose. See Cal. Penal Code § 28(a); People v. Blacksher, 52 Cal. 4th 769, 832 (2011). Thus, trial counsel made a reasonable and strategic decision to leave the evidence out. This decision was even more reasonable in light of Petitioner's poor credibility.

For these reasons, the Court finds that the state courts' decisions denying Petitioner's ineffective assistance of counsel claims was not based on any unreasonable application of Stickland and, as such, Petitioner is not entitled to relief on Ground One or Ground Two.

### B.    Right to Present a Complete Defense

Petitioner contends that he was deprived of a meaningful opportunity to present a complete defense by the trial court. See ECF No. 1, pg. 17. Petitioner rehashes his previous arguments and argues that the trial court failed its "duty to analyze what evidence was being neglected or omitted" by denying Petitioner's two Marsden motions. Id. at 23. Petitioner claims that the trial court ignored the following evidence in denying his Marsden motions: (1) trial counsel texting and emailing during trial proceedings; (2) Petitioner's correspondence informing the court that trial counsel was negligent, no evidence was being presented, and that Petitioner was receiving an unfair trial; (3) a police interview of Petitioner telling the detectives he did not mean to kill the victim; and (4) "admissible, exculpatory evidence that Petitioner was trying to present." Id. at 23-24.

"A State has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal." Hendricks v. Zenon, 993 F.2d 664, 669 (9th Cir. 1993) (citing Douglas v. California, 372 U.S. 353, 358 (1963)). In California, a criminal defendant who is dissatisfied with court-appointed counsel must be permitted to state the reasons why the defendant believes the attorney should be replaced. See People v. Marsden, 2 Cal.3d 118, 123-

14

24 (1970). When a defendant seeks to discharge counsel and substitute another attorney on the ground of inadequate representation, the court is required to allow the defendant to explain the basis for the motion and relate specific instances of the attorney's deficient performance. See id. Substitution is appropriate where the defendant can show "an actual conflict of interest. . . ." Wood v. Georgia, 450 U.S. 261, 273-74 (1981). Mere disagreement or friction between client and counsel is insufficient ground for substitution. See Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Even a breakdown in the attorney-client relationship based on disagreement over trial tactics and performance is not a ground for relief. See Carter v. Davis, 946 F.3d 489, 508-09 (9th Cir. 2019). Denial of a Marsden motion can only amount to a constitutional violation where there was a conflict between the defendant and counsel which prevented effective representation. See Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

Here, the state court addressed this claim on direct appeal and on collateral review both in the context of the applicable Strickland standard as well as the standard outlined above relating to Marsden motions. Thus, as with Petitioner's other claims, this Court reviews to determine whether the state courts' decisions were unreasonable.

The Court agrees with Respondent that Petitioner's claim asserted in Ground Three is essentially a recrafting of his various allegations of ineffective assistance of counsel and is based on Petitioner's disagreement with trial counsel over strategy and performance. To rise to the level of federal habeas relief, Petitioner would have to show that his problems with trial counsel were such that trial counsel demonstrated bias or an actual conflict of interest which prevented Petitioner from receiving a fair trial. Petitioner has not done so in this case. As discussed above, there is no basis to conclude that Petitioner's various disagreement with his trial counsel prevented effective representation such that denial of his Marsden motions would be a basis for habeas relief.

Because the state courts' decisions were not based on an unreasonable application of applicable federal legal principles, Petitioner is not entitled to habeas relief on Ground Three.

///

///

15

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1.    Petitioner's unopposed motion to file a supplemental brief, ECF No. 24, be GRANTED.

2.    Petitioner's petition for a writ of habeas corpus, ECF No. 1, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 14, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE